IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRIAN MICHAEL WATERMAN,

    **Plaintiff,**

    v.                                                    CASE NO. 20-3320-SAC

BOARD OF COMMISSIONERS OF
CHEROKEE COUNTY, KANSAS, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff filed this *pro se* civil rights case under 42 U.S.C. § 1983. At the time of filing, Plaintiff was a detainee housed at the Cherokee County Jail in Columbus, Kansas ("CCJ"). Plaintiff is currently incarcerated at the Hutchinson Correctional Facility in Hutchinson, Kansas. The Court granted Plaintiff leave to proceed *in forma pauperis*. On June 4, 2021, the Court entered a Memorandum and Order (Doc. 10) ("M&O") finding that Plaintiff's Complaint included multiple unrelated claims against multiple defendants and granting Plaintiff an opportunity to file an amended complaint. Plaintiff filed an Amended Complaint (Doc. 11), and the Court entered a Memorandum and Order (Doc. 29) ("M&O II") ordering Plaintiff to show good cause why his Amended Complaint should not be dismissed for the reasons set forth in the M&O II. This matter is before the Court on Plaintiff's Response (Doc. 30).

Plaintiff alleges in Count I that he is being punished as a pretrial detainee and is being retaliated against for reporting PREA violations. Plaintiff alleges that another detainee filed a PREA violation and listed Plaintiff, as well as other detainees, as witnesses. Plaintiff alleges that none of the detainees were ever spoken to about the violation. Plaintiff alleges that he was locked down for 24 hours and further retaliated against by receiving three disciplinary reports.

Plaintiff alleges that the disciplinary reports were fabricated because each officers' report stated different facts and the events listed were impossible.

In Count II Plaintiff alleges that his due process rights were violated on November 25, 2020, when his disciplinary hearing for a facility disturbance on November 24, 2020, was held less than 24 hours after the incident. Plaintiff alleges that he was not allowed to read the charges against him, to have witnesses, or to present evidence. Plaintiff alleges that he received 15 days in segregation.

Plaintiff alleges in Count III that he suffered "medical abuse" in violation of the Fourteenth Amendment. Plaintiff alleges that when he returned after surgery he was supposed to be given something stronger than I.B.U., but it was never done. Plaintiff also alleges that he was supposed to receive peanut butter and soup but was served a regular food tray. Plaintiff alleges that his medical records were subpoenaed and then his food was blended for a few days. Then he was served veggie burgers which were not on his approved diet. Plaintiff was not seen by Nurse Wagner for eleven days after his surgery, at which time she ordered no food that required Plaintiff to "chomp down on with [his] front jaw." (Doc. 11, at 11.) Plaintiff alleges that he was served boiled eggs every morning and lost weight due to medical orders being disobeyed regarding his diet. Plaintiff alleges that this caused him pain and suffering.

As Count IV, Plaintiff alleges that he was served unfit meals as a form of punishment. Plaintiff alleges that on one occasion the main course of his lunch was so "seasoned down" that it was unfit to eat. Plaintiff alleges that his evening meal also contained a main course that was overly seasoned. Plaintiff alleges that the food made him sick and his trays are constantly targeted.

Plaintiff seeks $500,000 in declaratory relief; $500,000 in punitive damages; $500,000 in compensatory damages; $500,000 in nominal damages; and injunctive relief in the form of disciplinary training and new policies, a new disciplinary program for Cherokee County employees, PREA training, and to have Advance Correctional and Consolidated Foods supervise their employees. (Doc. 11, at 6.)

The Court found in the M&O II that a pretrial detainee's claims regarding conditions of confinement are governed by the Due Process Clause, and that "the Eighth Amendment standard provides the benchmark for such claims." *Routt v. Howard*, 764 F. App'x 762, 770 (10th Cir. 2019) (unpublished) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)). The Court found that Plaintiff failed to allege long-term exposure to the conditions regarding his medical care and diet. "An important factor in determining whether conditions of confinement meet constitutional standards is the length of the incarceration." *Id*. (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998)). Thus, "[t]ime can play a significant part in a court's analysis of these issues," and "[t]here is . . . a *de minimus* level of imposition with which the Constitution is not concerned." *Kelley*, 2019 WL 6700375, at *10 (citations omitted). The Court found that Plaintiff failed to allege a constitutional violation, and his claims suggest, at most, mere negligence. *See Kingsley*, 135 S. Ct. at 2472 (finding that "defendant must possess a purposeful, a knowing, or possibly a reckless state of mind" because "liability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process") (citations omitted); *see also McCowan v. Morales*, 945 F.3d 1276, 1284 n.7 (10th Cir. 2019); *Estate of Vallina v. Cty. of Teller Sheriff's Office,* 757 F. App'x 643, 647 n.2 (2018) (noting that "the Supreme Court has consistently maintained that Fourteenth Amendment claims require 'something more' than mere negligence") (citation omitted).

In his Response, Plaintiff claims that instead of a delay of four days following his surgery, he actually did not see the nurse until the eleventh day following his surgery. Plaintiff claims he had his surgery on November 30, 2020, and Nurse Wagner visited him on December 11, 2020. (Doc. 30, at 1.) Plaintiff continues to allege that his medication and meal instructions were not fully followed after his surgery. *Id*. Plaintiff acknowledges that he received peanut butter and soup the first day following his surgery, but claims it was then changed to a regular tray. *Id*.

Plaintiff has failed to show a constitutional violation regarding his medical care and diet. Plaintiff's claims suggest, at most, negligence.

Plaintiff also claims that he was improperly punished as a pretrial detainee. As a pretrial detainee, Plaintiff was protected from punishment without due process. *Peoples v. CCA Detention Centers*, 422 F.3d 1090, 1106 (10th Cir. 2005) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). A pretrial detainee still may be subjected to restrictions while incarcerated, but the conditions and restrictions imposed may not constitute punishment. *Id*. The core question is whether the restriction is "imposed for the purpose of punishment or whether it is incident to some other legitimate government purpose." *Id*. (citation omitted). Thus, if a pretrial detainee is placed in segregation for a managerial purpose and not for punishment, no process is required. *Peoples*, 422 F.3d at 1106 (citation omitted).

The Court found in the M&O II that Plaintiff failed to show that his segregation or other conditions constituted unconstitutional punishment. Placing a pretrial detainee in disciplinary segregation "*without giving him an opportunity to be heard*" is a due process violation. *Hubbard v. Nestor*, 830 F. App'x 574, 583 (10th Cir. 2020) (emphasis added). Here, Plaintiff states that he received a hearing on the disciplinary charges.

In his Response, Plaintiff claims that his disciplinary hearing was held less than 24 hours after the "fabricated violations." (Doc. 30, at 2.) Plaintiff claims that the violations were fabricated because three officers submitted three different reports. *Id*. In his Amended Complaint, Plaintiff claims that the disciplinary reports were the result of an incident occurring on November 24, 2020. (Doc. 11, at 7.) Plaintiff claims that all three reports were "totally different and the events impossible." *Id*.

Plaintiff alleged in his Complaint that on November 24, 2020, Duckett was doing a watch tower in C-Pod while Plaintiff was in C-2 top bunk laying down. (Doc. 1, at 9.) Plaintiff claims that Duckett opened C-8 cell while another detainee was using the rest room. Another detainee informed Duckett that the cells could not be opened while detainees were showering, and Duckett responded that the door was to remain open at all times. *Id*. Plaintiff states that Plaintiff "perceived that Jailer Duckett had not been trained properly on prea. I pressed my intercom and stated to Jailer Davis 'tell your jailers not to be opening our cell doors while we're showering, that's a prea violation.'" *Id*. Plaintiff then acknowledges that the entire pod was told to lock down because Plaintiff was causing a disturbance and they "refused to lock down." *Id*.

Plaintiff claims in his Amended Complaint that:

> Nida['s] report[] state[s] at approx 1919 hours inmate Waterman called up to Control via intercom that he wanted to "fucking speak with Sgt. Nida" [and] Sgt. Nida informed Waterman to go to his cell and lock down. I was in my cell for the entire incident. CO-Davis at approx 1919 hours states in brief "even Duckett was doing a watch tour and going through C-pod and opened up door to C-8 because it was closed. As soon as Duckett opened up the door inmate Waterman started going off and being disrespectful saying "you mother fuckers can't be going around and opening doors when people are using the shower.["] Laying in C-2 top bunk I can't see cell C-8 at all. Another impossible event. Biggerstaff states at approx 1919 hours ["] I, officer Biggerstaff was in control room when I overheard inmate Waterman call up to Davis our control officer and tell him that our

> officers didn't have any idea what they were doing and needed better training.  CO-Davis advised Waterman that he needed to quit telling us how to handle our officers and to secure his door.  Waterman then started yelling through his door at Mercado telling him to file a prea report on CO-Duckett. Davis and I called into C-Pod and told everyone to lockdown due to Waterman causing a facility disturbance and needed to be moved.["]  Speaking through a cell door isn't a level 3 violation, nor was it abusive, or to create a facility disturbance.  It was to aid another in prea grievance policy.

(Doc. 11, at 7–8.)

Plaintiff's response fails to show that Plaintiff was improperly punished.  He acknowledges a disturbance and lockdown, but takes issues with discrepancies in the officer's reports.  Plaintiff fails to show that he was denied due process or that he was punished for any reason other than to restore order and for managerial purposes.

The Court also found in the M&O II that Plaintiff's request for injunctive relief is moot because Plaintiff is no longer confined at the  CCJ.  The Court also found that Plaintiff's request for compensatory damages is barred by 42 U.S.C. § 1997e(e), because Plaintiff has failed to allege a physical injury.  Section 1997e(e) provides in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).  The Court also found that Plaintiff failed to present any plausible basis for a claim of punitive damages because he alleges no facts whatsoever establishing that any defendant acted with a sufficiently culpable state of mind.

In his Response, Plaintiff does not address his claims for injunctive relief or punitive damages.  The Court found in the M&O that Plaintiff failed to show a physical injury entitling him to compensatory damages.  Plaintiff claims that his overly-seasoned meals caused his mouth to burn and caused him to vomit.  (Doc. 30, at 3.)  Plaintiff has not shown that his burning mouth

and vomiting were "symptom[s] of some more serious malady, or had any lasting effects." *Lewis v. Cox*, 2011 WL 3106929, at *1 (W.D. La. July 25, 2011) (citing *Alexander v. Tippah Cty.*, 351 F.3d 626, 631 (5th Cir. 2003) (While the Fifth Circuit recognized that "vomiting is an unpleasant experience," Section 1997e(e) precluded the plaintiffs from recovering for their emotional and mental injuries, when the only physical injuries they had suffered were nausea and one incident of vomiting.)); *see also Watkins v. Trinity Serv. Group Inc.*, No. 8:05-cv-1142, 2006 WL 3408176, at *4 (M.D. Fla. Nov. 27, 2006) (holding that "diarrhea, vomiting, cramps, nausea, and head aches from eating spoiled food" are de minimis injuries, precluding the recovery of compensatory damages under § 1997e(e)).

Plaintiff's Response fails to address the deficiencies set forth in the M&O II and fails to show good cause why his Amended Complaint should not be dismissed for failure to state a claim.

**IT IS THEREFORE ORDERED THAT** this matter is **dismissed** for failure to state a claim.

**IT IS SO ORDERED**.

**Dated March 2, 2022, in Topeka, Kansas.**

<u>s/ Sam A. Crow</u>
**Sam A. Crow**
**U.S. Senior District Judge**